RONALD A. MARRON (SBN# 175650)
ALEX T. SLIHEET (SBN# 153273)
LAW OFFICE OF RONALD A. MARRON, APLC,
3636 Fourth Avenue, Ste. 202
San Diego, CA 92103
Telephone:    (619) 696-9006
Facsimile:    (619) 564-6665
ron.marron@cox.net

LOIS BROWN KELLY, ESQ. (SBN# 134879)
ELDER LAW AND ADVOCACY
3675 Ruffin Road, Ste. 315
San Diego, CA 92123
lkelly@seniorlaw-sd.org

Attorneys for Plaintiff

**FILED**

2007 FEB 27  PM 3:27

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ do _____DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT CLARK, an individual<br><br>Plaintiff,<br><br>vs.<br><br>QUALITY HOME LOANS, a California Corporation, a/k/a QHL HOLDINGS, FUND TEN, LLC, a California limited liability company,<br><br>SENIOR AMERICAN FUNDING, INC., f/k/a/ FIRST CALIFORNIA FUNDING GROUP, INC., a California corporation;<br><br>CERTIFIED ESCROW, INC., a California corporation; | Case No. '07 CV 0287   BEN BLM<br><br>**COMPLAINT FOR:**<br><br>1. Violation of the Truth in Lending Act, 15. U.S.C. § 1601 *et seq*., and Federal Reserve Regulation Z. 12 C.F.R. § 226 *et seq*.;<br>2. Violation of the Real Estate and Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*. and Federal Reserve Regulation X, 24 C.F.R. § 3500 *et seq*.;<br>3. Violation of California Civil Code Sections 1920 and 1921;<br>4. Violation of the Unfair Competition Act, California Business and Processions Code § 17200 *et seq*.;<br>5. Violation of the False Advertising Act, California Business and Processions Code § 17500 *et seq*.;<br>6. Constructive Fraud, California Civil Code, § 1573;<br>7. Intentional Misrepresentation, California Civil Code §§ 1709-1710;<br>8. Concealment, California Civil Code §§ 1709- |

1
COMPLAINT

| | |
|---|---|
| BRIAN W. WHITE, an individual; | ) |
| | ) |
| | ) |
| RADONDO C. COLBERT, an | ) |
| individual; | ) |
| | ) |
| MATTHEW DAVID COPLEY, an | ) |
| individual; | ) |
| | ) |
| PRINCIPAL LIFE INSURANCE | ) |
| COMPANY, a corporation; | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| | ) |

1710;
9.  Negligent Misrepresentation, California Civil
    Code §§ 1709-1710;
10. Violation of Cal. Civil Code § 1711 – Fraud
    on the Public;
11. Rescission/Cancellation, California Civil
    Code §1689 & Court's Inherent Equitable
    Authority ;
12. Breach of Fiduciary Duty;
13. Negligence;
14. Breach of Implied Covenant of Good Faith
    and Fair Dealing;
15. Intentional Infliction of Emotional Distress
16. Elder Abuse: California Welfare &
    Institutions Code Section 15600 *et seq*;
17. Predatory Lending: Violation of California
    Financial Code § 4970 et seq.

**JURY TRIAL DEMANDED**

## I.

## INTRODUCTION

1.    Defendants, and each of them, are predatory lenders/brokers and they "preyed" upon Plaintiff, Mr. Robert Clark, a 74 year old financially unsophisticated senior, through predatory and abusive lending practices.  In early 2005, with interest rates still near historical lows, Defendants baited Plaintiff and *specifically wrote down* on Plaintiff's initial loan application: a) Plaintiff's income of $1869, b) that Plaintiff would get a 1% interest rate loan for 480 months, and c) that the monthly payments would be $328.71.

2.    Defendants then proceeded to use bait and switch tactics, slight of hand paper shuffling techniques, and brazenly, secretly and intentionally: a) changed Plaintiff's income on the final loan application from $1869 to $3171, b) stuck Plaintiff with a 10.75% interest rate[1] adjustable loan with a whopping 7.99% margin, and c) gave Plaintiff a monthly payment of $1,164.58, that charges

---

[1] Defendants used the same box on the initial application and the final application to indicate the interest rate on the loan.  [Attachment 4] [Attachment 6]

1  unreasonable and unearned fees, and that Plaintiff could not afford as to the payments along with

2  Plaintiff's other financial obligations.

3    3.    As if Defendants' predatory conduct was not bad enough, Defendants could not stop

4  themselves and <u>immediately</u> after closing the predatory loan, **<u>Defendants proceeded to also</u>**

5  **<u>appropriate $50,000 from Plaintiff's cash-out of the equity in his home with an annuity fraud</u>**

6  **<u>scheme to further line their pockets through commissions.</u>**  Finally, Defendants inserted a typical

7  predatory pre-payment penalty through a rider into their predatory loan to get more fees and

8  commissions should Plaintiff attempt to get out of or refinance their predatory loan.  See, "…Special

9  Committee on Aging, U.S. Senate," Report by, report from U.S. General Accounting Office GAO -04-

10  280, February 24, 2004:

11    "…elderly homeowners are disproportionately the targets of predatory lending. Abusive

12    lenders tend to target homeowners who have substantial equity in their homes, as many

13    older homeowners do. In addition, some brokers and lenders aggressively market home

14    equity loans as a source of cash, particularly for older homeowners who may have

15    limited incomes but require funds for major home repairs or medical expenses.

16    Moreover, diseases and physical impairments associated with aging--such as declining

17    vision, hearing, or mobility--can restrict elderly consumers' ability to access financial

18    information and compare credit terms. Some older persons may also have diminished

19    cognitive capacity, which can impair their ability to comprehend and make informed

20    judgments on financial issues. Finally, several advocacy groups have noted that some

21    elderly people lack social and family support systems, potentially increasing their

22    susceptibility to unscrupulous lenders who may market loans by making home visits or

23    offering other personal contact."

24    4.    Predatory and abusive lending practices inflict wide-ranging damage on society:

25  borrowers and their families can be devastated by these practices, which often result in non-judicial

26  foreclosure of the borrowers' homes.  Defendants in this action preyed upon Plaintiff, Mr. Robert

27  Clark, who is a financially unsophisticated 74 year old senior unable to consummate real estate

28

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

1  transactions without the help of real estate professionals.  Plaintiff seeks rescission of the predatory

2  loan in which he is trapped, equitable relief on behalf of the general public, and monetary damages.

3  This is an action for declaratory judgment, permanent injunctive relief, and damages for predatory

4  mortgage lending and elder abuse.

5  **II.**

6  **JURISDICTION AND VENUE**

7       5.    Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the

8  claims alleged herein arise under the laws of the United States.  This Court has supplemental

9  jurisdiction pursuant to 28 U.S.C. Section 1367 to hear and determine plaintiff's state law claims

10  because those claims are related to Plaintiff's federal claims and arise out of a common nucleus of

11  related facts and form part of the same case or controversy under Article III of the United States

12  Constitution.

13       6.    The Court has jurisdiction over Plaintiff's action for declaratory relief Pursuant to 28

14  U.S.C. section 2201 and Rule 57 of the Federal Rules of Civil Procedure.  Injunctive relief is

15  authorized by 28 U.S.C. section 2203 and Rule 65 of the Federal Rules of Civil Procedure.

16       7.    Venue is proper in the Southern District of California Pursuant to 28 U.S.C. section

17  1391(b)(2) in that the unlawful conduct that gave rise to these claims occurred within the Southern

18  District of California.

19  **III.**

20  **DEFENDANTS ARE PREDATORY LENDERS AND BROKERS**

21       8.    There is no uniformly accepted definition of "predatory lending."  However, the

22  United States Department of Housing and Urban Development ("HUD") has defined predatory lending

23  as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics,

24  or taking unfair advantage of a borrower's lack of understanding about loan terms." *Curbing Predatory*

25  *Home Mortgage Lending* (June 2000), a joint report of the Department of Housing and Urban

26  Development and the Treasury Task Force on Predatory Lending ("HUD report") at 1.  According to

27

28

1 HUD, "[t]hese practices are often combined with loan terms that, alone or in combination, are abusive

2 or make the borrower more vulnerable to abusive practices." *Id.*

3       9.    HUD and the United States General Accounting Office ("GAO") have identified

4 various lending practices as predatory. Since predatory lenders are constantly developing new

5 techniques to take advantage of borrowers, any enumeration of predatory practices necessarily will be

6 incomplete. Nevertheless, it is generally accepted by the lending industry and government agencies

7 that monitor that industry that predatory lending practices include: (a) engaging in aggressive, high-

8 pressure and/or misleading sales tactics; (b) lending without regard to the borrower's ability to repay;

9 (c) imposing excessive prepayment penalties that trap borrowers into predatory loans; (d) making

10 misrepresentations or to otherwise misleading borrowers about loan terms; (e) falsifying loan

11 documents; (f) targeting low-income, elderly and minority borrowers for predatory lending campaigns;

12 (g) charging excessive fees, points and interest rates unrelated·to the borrower's credit/risk profile; (h)

13 misleading borrowers about the borrower's credit/risk profile to steer borrowers to a higher-cost loan

14 that is not justified by the borrower's true profile; and (i) causing borrowers to refinance loans multiple

15 times over a short period of time without any economic gain to the borrowers. HUD Report at 2;

16 *Federal and State Agencies Face Challenges in Combating Predatory Lending* (January 2004), a

17 report by the United States General Accounting Office ("GAO") Report at 3-4, 18-19. These and

18 similar practices, individually and collectively, are referred to herein as "predatory lending" practices.

19 <u>Defendants engaged in most of the above practices toward Mr. Clark.</u>

20       10.    Predatory lenders use prepayment penalties as a means to trap borrowers into loans

21 with onerous terms. GAO Report at 19. Borrowers cannot refinance and escape those onerous terms

22 without incurring thousands of dollars in new fees or paying prepayment penalties, further stripping

23 the equity from their homes. <u>Defendants engaged in this practice toward Mr. Clark.</u>

24       11.    Predatory lenders frequently deceive borrowers and engage in outright fraud through

25 practices such as falsifying loan applications. GAO Report at 19. The elderly are primary targets and

26 victims of predatory lending practices. Predatory lenders prey on the elderly who are financially

27

28

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

1  unsophisticated and/or lack access to mainstream financial outlets.  HUD Report at 22; GAO report at

2  25. Defendants engaged in this practice toward Mr. Clark.

3          12.   Predatory lending practices often lead homeowners into a cycle of refinancing,

4  foreclosure, economic ruination and segregation from conventional credit sources.  HUD Report at 74.

5  On a larger scale, when predatory lending practices are concentrated in specific areas—as they

6  frequently are—communities suffer from destabilization through the loss of equity, distressed and

7  vacant properties, and stifled economic development.  GAO Report at 20.  This causes a depression in

8  property values and requires a entire neighborhoods to pay the price for the wrongful practices of

9  unscrupulous lenders.

10         13.   Subprime lending, which is not predatory lending,  is a rapidly growing segment of the

11  mortgage market which generally consists of borrowers who, for a variety of reasons, might be denied

12  access to market-fair credit due to their perceived "credit risk."  A typical borrower in the subprime

13  mortgage market is "house-rich" but "cash-poor," having built up equity in his home but in little else,

14  and has a lower net income than the average borrower.  Subprime lenders generally charge **somewhat**

15  higher interest rates to account for the increased **"credit risk"** associated with these loans. *There is no*

16  *great capital risk to subprime lending because lenders have their money secured by the real estate,*

17  *and in general do not lend above 70% of the appraised value to ensure repayment of  the principal of*

18  *the loan as well as coverage for any foreclosure cost.*  If lenders do lend at a higher loan to value

19  figure, the lenders can always demand mortgage insurance from the borrower.

20         14.   However, unscrupulous lenders/brokers have up-played the "credit risk" argument in

21  the subprime market to justify engaging in predatory lending which is nothing less than an attempt to

22  steal as much money as possible from the equity in a borrower's home, and this includes designing a

23  transaction which will intentionally lead to a foreclosure on the borrower's home.  These

24  lenders/broker are called predatory because they prey on financial naïve borrowers who are cash poor

25  but equity rich.  The Defendants in this complaint are predatory lenders and brokers.

26         15.   A predatory mortgage broker acts as the agent of the lender and abandons his fiduciary

27  duty to the buyer.  The predatory mortgage broker "preys" on the borrower to take as much money in

28

1  fees, costs, commissions as possible from the equity in the borrower's home.  Predatory lenders engage

2  in the same conduct and/or adopt a closed eye posture to the predatory mortgage broker's forged

3  applicants' data on loan applications.

4       16.   Plaintiff alleges that Defendants, and each of them, teach their employees/agents to

5  lure borrowers with promises that their loans will have certain terms and conditions, knowing

6  Defendants have no intent of providing such loans, and then use slight of hand paper shuffling tactics,

7  high-pressure sales tactics, or outright fraud to induce borrowers to sign loan contracts with

8  significantly less favorable terms and conditions.  Plaintiff alleges that Defendants failed to provide

9  required disclosures, failed to leave a true copy of loan documents in borrowers' possession, unlawfully

10  induced borrowers to enter into mortgages knowing that borrowers will not be able to meet the

11  monthly mortgage payments based on their monthly income or where excessive or unfair fees are

12  levied, that mortgage salespeople and brokers forged applicants' data on loan applications, and that

13  Defendants insert pre-payment penalties to their predatory loans in order to lock borrower's into the

14  loans and garner further fees, costs and commissions through inevitable refinancing.

15                              **IV.**

16                           **PARTIES**

17       17.   Plaintiff, ROBERT CLARK (hereinafter "Plaintiff") was at all relevant times

18  mentioned herein a resident of San Diego, California.  Mr. Clark is 74 years old. Plaintiff is an

19  unsophisticated senior and unable to consummate real estate transactions without the assistance of real

20  estate professionals.  Accordingly, Plaintiff reasonably relied on all Defendants in the loan process.

21       18.   Plaintiff is informed and believes and thereon alleges that Defendant QUALITY HOME

22  LOANS (hereinafter "QHL") is a California corporation doing business in the State of California.

23  QHL is also known as QHL HOLDINGS, FUND TEN, LLC (hereinafter also "QHL") which is a

24  California Limited Liability Corporation doing business in the State of California.  QHL's business

25  address is 27001 W. Agoura Road, No. 325, Agoura Hills, CA 91301.

26       19.   Plaintiff is informed and believes and thereon alleges that Defendant SENIOR

27  AMERICAN FUNDING, INC., f/k/a/ FIRST CALIFORNIA FUNDING GROUP, INC., (hereinafter

28

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

1 | "SAF/FCF") is a California Corporation doing business in the State of California; Plaintiff further

2 | alleges on information and belief that Defendant Brian White is one of the owners of SAF/FCF.

3 | SAF/FCF's business address is 2650 Camino Del Rio N., Ste 350, San Diego, CA 92108.  Defendant

4 | Brain White is the Agent for service of Process of SAF/FCF.

5 | 20.    Plaintiff is informed and believes and thereon alleges that Defendant CERTIFIED

6 | ESCROW, INC. ("CEI") is a California Corporation doing business in the State of California.  Plaintiff

7 | further alleges on information and belief that Defendant Brian White is one of the owners of CEI.

8 | CEI's business address is also 2650 Camino Del Rio N., Ste 350, San Diego, CA 92108.  Defendant

9 | Brain White is also the Agent for service of Process of CEI.

10 | 21.    Plaintiff is informed and believes and thereon alleges that Defendant BRIAN W.

11 | WHITE (hereinafter "WHITE") is a California resident, a licensed real estate professional and

12 | insurance broker, and was at all relevant times herein mentioned was an owner, agent and/or employee

13 | of the corporate Defendants. Plaintiff is further informed and believes, and thereon alleges, that at all

14 | relevant times herein Defendant WHITE engaged in the deceptive acts and practices which will be

15 | alleged below while acting within the scope of this employment with the corporate Defendants.

16 | WHITE's business address is 2650 Camino Del Rio N., Ste 350, San Diego, CA 92108.  Defendant

17 | WHITE is also a registered insurance agent for Defendant PRINCIPAL LIFE.

18 | 22.    Plaintiff is informed and believes and thereon alleges that Defendant RODONDO C.

19 | COLBERT (hereinafter "COLBERT") is a California resident, a licensed real estate professional, and

20 | was at all relevant times herein mentioned was an owner, agent and/or employee of the corporate

21 | Defendants. Plaintiff is further informed and believes, and thereon alleges, that at all relevant times

22 | herein Defendant COLBERT engaged in the deceptive acts and practices which will be alleged below

23 | while acting within the scope of this employment with the corporate Defendants.  COLBERT's

24 | business address is also 2650 Camino Del Rio N., Ste 350, San Diego, CA 92108.

25 | 23.    Plaintiff is informed and believes and thereon alleges that Defendant MATTHEW

26 | DAVID COPLEY (hereinafter "COPLEY") is a California resident, a licensed real estate and

27 | insurance broker, and was at all relevant times herein mentioned was an owner, agent and/or employee

28 |

of the corporate Defendants. Plaintiff is further informed and believes, and thereon alleges, that at all relevant times herein Defendant COPLEY engaged in the deceptive acts and practices which will be alleged below while acting within the scope of this employment with the corporate Defendants. Defendant COPLEY's business address is also 2650 Camino Del Rio N., Ste 350, San Diego, CA 92108.

24.    Plaintiff is informed and believes and thereon alleges that Defendant Principal Life Insurance Company (hereinafter "PRINCIPAL LIFE") is a corporation selling insurance products and doing business in the State of California with its headquarters at 711 High Street, Des Moines, IA 50392.

25.    At all times mentioned in the causes of action alleged herein, <u>each and every Defendant was an agent and/or employee of each and every other Defendant.</u> In doing the things alleged in the causes of action stated herein, each and every Defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission and authorization of each of the remaining Defendants, or otherwise acting with apparent authority.

26.    All actions of each Defendant as alleged in the causes of action stated herein were ratified and approved by every other Defendant or his officers or managing agents. Defendant knowingly and substantially participated in the conduct as alleged herein.

27.    <u>Defendants, SAF/FCF, CEI, WHITE, COLBERT, COPLEY, and each of them, functioned as the agents of Defendant QHL who was the lender and abandoned their fiduciary duties to the Plaintiff.</u> Defendants, SAF/FCF, WHITE, COLBERT, COPLEY, and each of them, committed fraud regarding the Plaintiff in terms of procuring his loan and in deceiving him to sign an annuity application with Defendant PRINCIPAL LIFE.

28.    At all times herein relevant, there existed a civil conspiracy between Defendants, and each of them, the object of which was to reap substantial profits by targeting California seniors to engage in transactions which were not for Plaintiff's benefit so as to increase fees and commissions, for the sale of unsuitable adjustable rate mortgages and thereafter seek to profit by foreclosure or refinancing on the seniors' equity in their homes. Said conspiracy also included a common plan or

design to falsify the loan applications, to obscure the terms of the loan applications and to mislead and deflect any questions or complaints raised by the seniors regarding the loan applications. Additionally, the conspiracy is an ongoing conspiracy in that Defendants, and each of them, continue to further its ends by incessantly calling the Plaintiff since January of 2007, and prompting him to refinance his loan or face foreclosure.

29.    When this complaint references an act of any Defendant or Defendants, such allegation shall be deemed to mean the act of those Defendants named in the particular cause of action and each of them acting, individually, jointly and severally.

**V.**

**"DEFENDANTS' FIVE (5) PART**

**DECEPTIVE ACTS AND PRACTICES PREDATORY LOAN SCHEME"**

30.    Mr. Clark hereby repeats and incorporates by this reference the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

31.    At all times relevant herein, Plaintiff was a 72 year old senior.  Plaintiff has been living in his home located at 540 Oakdale Lane #L, El Cajon, CA, since 1965.  Plaintiff rented until 1974 when he saved enough to purchase his home.   Plaintiff is an financially unsophisticated senior and unable to consummate real estate transactions without the assistance of real estate professionals. Accordingly, Plaintiff reasonably relied on all Defendants in the loan process.

1)    **Defendants lured Plaintiff in with the enticement of a Reverse Mortgage which they had no intention of fulfilling.**

   a)  In early Spring of 2005, Plaintiff received an advertisement flyer in the mail from Defendant SAF/FCF advertising the benefits of a reverse mortgage to make use of Plaintiff's growing home equity in his home.  Plaintiff already had a line of credit on his home from Wells Fargo Bank of which approximately $48,000.00 had been used.

   b)  Plaintiff answered the ad and filled out a reverse mortgage application with Defendant SAF/FCF. [Attachment 1]

c) Defendant SAF/FCF went through the steps of a reverse mortgage application and did a credit check on Plaintiff on March 24, 2005. Plaintiff's scores ranged from 596 – 683. [Attachment 2]

d) Defendant also did an appraisal on Plaintiff's home for the reverse mortgage on March 2005, with an appraised value of $178,000. [Attachment 3, p.4]

e) However, Defendant SAF/FCF failed to provide Plaintiff with a timely or accurate Truth In Lending Act ("TILA") disclosure statement on the reverse mortgage application.

f) Defendant also failed to provide Plaintiff with the proper documentation on the reverse mortgage application.

g) At the end of the process, Defendant SAF/FCF suddenly informed Plaintiff that he did not qualify for a reverse mortgage. The sole reason given was that Plaintiff's Homeowners Association would not allow it. Defendant SAF/FCF did not give Plaintiff any written documentation for the denial of the reverse mortgage application or any written reason explaining the denial of the reverse mortgage application. However, another broker has subsequently been able to qualify Plaintiff for a reverse mortgage.

2) **Defendants' deception on Plaintiff's loan application and Defendants' false statements that Plaintiff would get him a loan with a 1% interest rate for 480 months with a payment of $328.71.**

a) Upon telling Plaintiff that his reverse mortgage application has been denied, Defendant SAF/FCF, acting through Defendants WHITE AND COLBERT, then immediately told Plaintiff that it had an alternative plan to get Plaintiff money from the growing equity in his house. Defendant SAF/FCF told Plaintiff that he could qualify for a regular forward mortgage. Defendant SAF/FCF had Plaintiff fill out a uniform residential loan application ("URLA"), but Defendant SAF/FCF did not date the application. [Attachment 4]

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

b) On the URLA application, Plaintiff indicated his monthly income to be approximately $1869.00 and indicated that he was retired. [Attachment 4]

c) On the URLA application, Defendant SAF/FCF told Plaintiff that his interest rate would only be 1% and Defendant SAF/FCF wrote this down on the URLA application. [Attachment 4]

d) On the URLA application, the loan term was also written down as 480 months. [Attachment 4]

e) On the URLA application, the "Proposed" payment for the loan was indicated at "$328.71" [Attachment 4]

f) Defendant SAF/FCF never told Plaintiff that he was getting a loan where he would be paying interest only for the first two years.

g) Defendant SAF/FCF failed to provide Plaintiff with a timely or accurate TILA disclosure statement on the URLA application.

h) Defendant also failed to provide Plaintiff with the proper documentation on the URLA application.

3)  **Defendants false July 15, 2005, TILA disclosure statement and July 15, 2005, "Good Faith" Estimate ("GFE") and Mortgage Loan Disclosure ("MLD")**

a) On July 15, 2005, Plaintiff received a TILA statement by Defendant SAF/FCF that intentionally left blank the boxes at the top indicating whether the TILA was an initial or final disclosure. [Attachment 5, p.1]

b) The July 15, 2005, TILA statement is inaccurate because it does not show the terms and conditions that Defendant SAF/FCF told Plaintiff and that were reflected on Plaintiff's loan application. [Attachment 4]

c) The July 15, 2005, TILA is for 360 not 480 months. [Attachment 5, p.1]

d) The July 15, 2005, TILA is for an interest rate of 10.75% not for 1%. [Attachment 5, p.1]

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

e) The July 15, 2005, TILA is a "2/28" loan where the first two years of payment are fixed at $1164.58 and the payments are interest only. Such terms were never discussed with Plaintiff and are not reflective of his loan application.

f) The July 15, 2005, TILA is inaccurate because an APR is impossible as the note rate for the loan that Plaintiff got was 10.75% [Attachment 5, p.1]

g) The July 15, 2005, TILA shows a payment of $1,164.58, [Attachment 5, p.1] which is not the "Proposed" payment of $328.71 that Plaintiff was told and was put down in Plaintiff's initial application. [Attachment 4]

h) The July 15, 2005, TILA is inaccurate as to the payments after the first two years because Plaintiff is paying interest only for the first two years, and therefore the payments must increase for the remainder of the loan, otherwise the July 15, 2005, TILA would show a balloon payment. However, the July 15, 2005, shows a reduced amount of payment after the first two years, and shows NO balloon payment. [Attachment 5, p. 1]

i) The July 15, 2005, Good Faith Estimate ("GFE") which is required by RESPA and the Mortgage Loan Disclosure ("MLD") which is required by the California Department of Real Estate are both attached. [See Attachment 5, p.2-4]  The figures in both statements should be exactly the same, but they are not and are incomplete and inaccurate. The MLD does not list or lists inaccurately, including but not limited to the following:

   (1) HUD line 808, the "Mortgage Broker Commission/Fee," is not listed on the MLD [Attachment 5, p.3]

   (2) HUD 801, the "Lender's Loan Origination Fee," is understated on the MLD at $970 versus on the GFE 801 which is stated as $3570 [Attachment 5, p.2-3];

   (3) Section I on page 2 of the MLD, the "Payments of Other Obligations" did not list the payment to Wells Fargo of $53,099 [Attachment 5, p.4];

13
PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

(4) Section "IV" and "V", are intentionally left blank [Attachment 5, p.4], even though Plaintiff was given a pre-payment penalty in his loan;

(5) Section VII, "Other Liens" does not list the Wells Fargo Bank lien and it does not list the anticipated QHL lien and both are required to be listed. [Attachment 5, p.4];

(6) Section "VIII" is left blank. [Attachment 5, p.4]

4) **Defendants falsified Plaintiff's closing loan application and failed to provide a timely or accurate TILA disclosure**

a) On August 9, 2005, at closing, the loan was dramatically and secretly switched and for the worse. Defendants SAF/FCF and QHL had Plaintiff sign a closing 1003 loan application on August 9, 2005. [Attachment 6]

b) However, to get Plaintiff qualified for the loan, these Defendants, and each of them including QHL, falsified his income on the 1003 application from $1869.00 to $3171.00. [Attachment 6]

c) These Defendants also switched the interest rate from 1% on the URLA application Plaintiff originally submitted, to 10.75% on the 1003 form at closing. The identical box was used on both applications to indicate the interest rate on the loan.

d) The term of the loan was still indicated to be 480 months, but the July 15, 2005, TILA disclosure statement that Plaintiff received indicated a loan of 360 months.

e) The monthly payments on the loan were changed from $328.71 to $1,164.58.

f) All of these facts were kept hidden from Plaintiff when he signed.

g) At closing on August 9, 2005, these Defendants, and each of them, failed to provide Plaintiff with a timely or accurate TILA disclosure statement.

h) At closing on August 9, 2005, these Defendants also failed to provide Plaintiff with the proper documentation on the 1003 loan application.

i) At closing on August 9, 2005, Defendant QHL had Plaintiff sign a rider to his loan that allowed Defendant QHL to collect a pre-payment penalty.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

**5)** **Defendants' excessive greed and fraud as to the PRINCIPAL LIFE annuity**

    a) Plaintiff mortgage application went through escrow and escrow closed. Plaintiff was given a check for approximately $67,000.

    b) Plaintiff's loan amount was $130,000 and part of this money was used to pay off an existing line of credit with Wells Fargo of approximately $53,307.00.

    c) Almost immediately, after escrow closed, Plaintiff received a phone call from Defendant SAF/FCF, acting through Defendants WHITE and COLBERT, and was instructed not to spend the money because escrow was short $50,000, and Plaintiff needed to bring a check to Defendant SAF/FCF for $50,000. Plaintiff asked why, and was told that the Wells Fargo liability had not been paid at closing. This was a lie. [Attachment 6, p.4]

    d) However, Plaintiff mailed a blank signed check to Defendant SAF/ FCF for $50,000, but did not receive a receipt from Defendant SAF/FCF. Defendant SAF/FCF filled out the payee on the check, and even misspelled the payee in order to put Mr. Clark's initials on the check in an attempt to lend authenticity to their fraud. Defendant SAF/FCF made the check payable to Defendant PRINCIPAL LIFE. The cashed check is attached. [Attachment 7].

    e) On information and belief, Plaintiff alleges that Defendants had him unknowingly sign an annuity application sometime during his loan application process and that Defendants submitted this signed application to Defendant PRINCIPAL LIFE for a $50,000 annuity in order to collect further costs, fees and commissions from Plaintiff's equity.

    f) Defendant COPLEY put himself down as the insurance agent on the Principal Life annuity application. Plaintiff has never heard of Defendant COPLEY and on information and belief, has never seen or met Defendant COPLEY. Defendant COPLEY works out of the offices of Defendant SAF/FCF, WHITE and COLBERT at 2650 Camino Del Rio N., Ste 350, San Diego, CA 92108.

g)  Defendant COPLEY is not registered as an insurance agent with Defendant

PRINCIPAL LIFE. [Attachment 8]

h)  Defendant COPLEY had his insurance agent license suspended or revoked for:

"...a misstatement in the document filed in support of his application when he

advised the Insurance Commissioner of the circumstances surrounding the incident

that led to his arrest and conviction.  Such information was false and known to

Respondent to be false in that Respondent had previously admitted that he knew the

items in his possession were stolen...it would be against the public interest to permit

Respondent to transact insurance in the State of California..." [Attachment 9, p.2]

32.    Plaintiff was unable to keep up with his loan payments.  Plaintiff complained to the

Department of Corporations.  Defendant QHL the lender, responded with their fraudulent 1003

mortgage application that listed Plaintiff's income at $3171.00, and that listed an interest rate of

10.75% on the loan, and QHL provided no TILA disclosure statement to the Department of

Corporations.

33.    In typical predatory lending form, Defendants have begun to incessantly call Plaintiff to

refinance his loan in an effort to collect more fees, points and commissions from Plaintiff for the

refinancing and the pre-payment penalty clause of his loan.  Defendants in the past two months, have

incessantly called Plaintiff prompting him to refinance or face foreclosure.

**VI.**

**INJURIES**

34.    In August of 2005, when Plaintiff refinanced through Defendants, Plaintiff did not have

a sufficient combined income that would allow him to meet his monthly mortgage payments and

would satisfy all of his other financial obligations.

35.    Because of his modest income, Plaintiff struggled to meet his monthly mortgage

payments for a year and used the money that he was left with at the close of his loan which was

approximately $17,000 after Defendants stole $50,000 from Plaintiff through their annuity scheme.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

36.    Plaintiff eventually ran out of money and had to borrow from family and friends to make the payments of his loan during the months of approximately June – August of 2006.

37.    Plaintiff was unable to pay the mortgage from September 2006 through the present. Plaintiff also has experienced and continues to experience emotional distress as a result of Defendants' actions.

38.    Plaintiff's new loan contains terms that are predatory, including but not limited to a pre-payment penalty that Defendants included in his loan as a rider.

39.    The monthly mortgage payments on the loan of $1164.58 are fixed for only two years and are interest only, and thereafter will periodically increase in September of 2007, and force Plaintiff into foreclosure.

40.    There now exists an actual controversy between the parties regarding Defendants' duties under applicable law.  Therefore, Plaintiff is entitled to declaratory relief.

41.    Defendants have illegally gained fees and profit from Plaintiff as described herein. Therefore, Plaintiff is entitled to restitution.

42.    Unless enjoined, Defendants will continue to engage in the unlawful acts described above.  Plaintiff continues to suffer irreparable harm from Defendants unlawful acts unless relief is provided by this Court.  Accordingly, Plaintiff is entitled to injunctive relief.

43.    Defendants acted intentionally, maliciously, wantonly, recklessly and in bad faith as described herein.  Accordingly, Plaintiff is entitled to punitive damages, and treble damages under Cal. Civil Code Section 3345, as Defendants knew that Plaintiff was a senior.

### FIRST CAUSE OF ACTION

**Violation of the Truth in Lending Act,**

**15. U.S.C. § 1601 *et seq*., and**

**Federal Reserve Regulation Z. 12 C.F.R. § 226 *et seq*.;**

**(Against Defendants QHL, SAF/FCF, WHITE & COLBERT)**

44.    Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

45.     Plaintiff has served Defendant SAF/FCF and Defendant QHL with written Notice of Cancellation as authorized under the TILA. [Attachment 10]

46.     Defendant QHL is a creditor within the meaning of the Truth In Lending Act ("TILA") as implemented by Regulation Z.

47.     Defendants violated TILA and Regulation Z by failing to provide Plaintiff with appropriate material disclosure required under TILA, including but not limited to the following:

a)  The QHL mortgage loan is a high-fee loan subject to a prepayment penalty;

b)  Defendants falsified Plaintiff's loan information, and closed their eyes to the ability of Plaintiff herein to repay the loan;

c)  Based on information and belief, Defendants did not deliver to Plaintiff the required copies of notice to him of his three day right to rescind;

d)  Based on information and belief, Plaintiff was over charged for closing costs and related fees, which Defendants failed to disclose to Plaintiff and which were not bona fide and reasonable and thus were "finance charges" under TILA that required proper disclosure which Defendants did not make in their TILA(s). Defendants SAF/FCF, WHITE, COLBERT, functioned as the agents of Defendant QHL and abandoned their fiduciary duty to Plaintiff. Defendant QHL paid the other Defendants under the guise of paying their fees, costs and commissions, but these payments were finance charges because the value of the services of these Defendants actually performed for Plaintiff by implementing their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above, is ZERO. Defendants did a bait and switch with a reverse mortgage; did a bait and switch with Plaintiff's 1% - 480 month loan application and Proposed payments of $328.71; falsified Plaintiff's loan application; and then failed to disclose material terms of the transaction to the Plaintiff so that Defendants could receive fees, points, yield spread premiums ("YSP") and commissions. Thus, Defendants' fees, points, YSP and commissions were not

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

bona fide and reasonable and were "finance charges" under TILA that required proper disclosure in the TILA.

e) Plaintiff applied for and was told that he was getting a loan with a 1% interest rate and a schedule of 480 months with a payment of $328.71. Defendants did not issue Plaintiff a TILA based on Plaintiff's loan application. Defendants did not notify Plaintiff that it was not underwriting the loan on his application and did not notify Plaintiff that the TILA presented at closing was not for the loan on Plaintiff's application.

48. Any and all statute(s) of limitations relating to disclosure and notices required under 15 U.S.C. Section 1601 *et seq*. were tolled due to the Defendants' failure to effectively provide the required disclosures and notices.

49. An actual controversy now exists between Plaintiff, who contends he has the right to rescind the QHL loans alleged in this complaint, and, based on information and belief, Defendant QHL who denies that right.

50. As a direct and proximate result of these violations, Plaintiff was and continues to be damaged in a amount according to proof but not yet ascertained including, without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

51. Defendant was unjustly enriched at the expense of the Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by defendant.

52. Plaintiff believes that the acts of Defendant as describe herein were willful, wanton an in conscious disregard of the rights of Plaintiff and on that basis allege that Plaintiff is entitled to recover punitive damages in a mount to be established at trial.

53. Under California Civil Code Section 3345, Plaintiff asks for treble damages because Defendants knew or should have known that their conduct was directed to Plaintiff who is a senior citizen, and that Defendants' conduct would most likely cause this senior Plaintiff to suffer loss or encumbrance of his primary residence and/or substantial loss of property set aside for retirement, and that Plaintiff was more vulnerable than other members of the public to the Defendants' conduct.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

WHEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### Violation of the Real Estate and Settlement Procedures Act,

### 12 U.S.C. § 2601 *et seq.* and

### Federal Reserve Regulation X, 24 C.F.R. § 3500 *et seq.*;

### (Against all Defendants except PRINCIPAL LIFE)

54.     Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

55.     The loans to Plaintiff by Defendant QHL are federally related mortgage loans defined in the Real Estate Settlement Procedures Act ("RESPA") and implemented by Regulation X which are broad in terms of their requirements.

56.     Defendants violated Section 8(a) of RESPA, 12 U.S.C. § 2607(a), which provides that "no person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

57.     Defendants also violated Section 8(b) of RESPA, 12 U.S.C. § 2607(b), provides that "no person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." Section 8 violations are further defined by 24 C.F.R. § 3500.14, "Prohibition against kickbacks and unearned fees."

58.     Also, HUD addressed payments in the form of yield spread premiums ("YSP"), and explained that "in some cases less scrupulous brokers and lenders take advantage of the complexity of the settlement transaction and use yield spread premiums as a way to enhance the profitability of mortgage transactions without offering the borrower lower up front fees." Id. at 53,054.

59.    Based on information and belief, Defendant QHL paid to Defendants SAF/FCF,
WHITE & COPLEY, a YSP on Plaintiff's loan and no Defendant offered the Plaintiff lower up front
fees for this YSP payment.

60.    Moreover, HUD established a two-part test for determining the legality of lender-
payments to mortgage brokers under RESPA: (1) Whether goods or facilities were actually furnished
or the services were actually performed for the compensation paid, and (2) whether the payments are
reasonably related to the value of the goods or facilities that were actually furnished or services that
were actually performed.  HUD, Statement of Policy 2001-1, 66 Fed. Reg. at 53,052.

61.    In this case Defendants, and each of them, engaged in goods/services that were not
actually performed and where the payments were not reasonably related to the value of the
goods/services because the Defendants' chose to implement their "**5 part Deceptive Acts and
Practices Predatory Loan Scheme"** as alleged above.

62.    The value of the services that Defendants actually performed for Plaintiff by
implementing their "**5 part Deceptive Acts and Practices Predatory Loan Scheme"** as alleged
above, is ZERO.  Defendants did a bait and switch with a reverse mortgage; did a bait and switch with
Plaintiff's 1% - 480 month loan application with Proposed payments of $328.91; falsified Plaintiff's
loan application; and then failed to disclose material terms of the transaction to the Plaintiff, including
stealing Plaintiff's equity in the form of an unknown purchase of an annuity, all so that Defendant
could receive fees, costs, points, YSP's and commissions.  Defendants SAF/FCF, WHITE, COPLEY,
functioned as the agents of Defendant QHL and abandoned their fiduciary duty to Plaintiff.  Defendant
QHL paid these Defendants their fees, costs and commissions and YSP.

63.    Defendants acceptance of a YSP and/or other payments and Defendant QHL's payment
of that YSP or other payments, was an unlawful kickback and /or an unearned fee under RESPA
because it was not reasonably related to the performance of lawful services by the accepting
Defendants.  Instead of performing lawful services, the accepting Defendants implemented their "**5
part Deceptive Acts and Practices Predatory Loan Scheme"** as alleged above.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

64.     Defendant QHL should have know that Defendant did not earn the YSP or other payments because, *inter alia*, "…common industry practice is that lenders follow underwriting standard that demand a review of originations and therefore lenders typically know that brokers have performed the services required…" HUD's 2001-1 Policy Statement at 53055. If Defendant QHL had reviewed Plaintiff's loan origination, including his loan application, QHL would have learned of the obvious red flag it contained.

65.     RESPA also prohibits any person from accepting an excessive or unearned fee. All fees on Plaintiff's loans are excessive or unearned because the loan was not reasonably related to the performance of lawful services, in that it had been falsified through defendant implementation of their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above. Defendants charged an origination fee and a mortgage broker fee without any supporting information of what services were performed to warrant this charge, and then charged duplicative fees by labeling such fees as: a) processing fees, b) administrative fees and c) application fees. Once again, all of these fees paid to Defendants were unlawful kickbacks an/or unearned fees under RESPA because they were not reasonably related to the performance of lawful services

66.     Pursuant to 12 U.S.C. Section 2607 (d), Plaintiff is entitled to recovered from Defendant, and each of them, and amount equal to three times the amount of any and all charges for "settlement services" paid directly or indirectly by Plaintiff, as well as actual damages, court costs, attorneys' fees and any other amounts or damages permissible under RESPA.

67.     By the actions described herein and as a proximate cause of Defendants conduct, Plaintiff was damaged, in an amount to be proven at trial but not yet ascertained.

68.     Under California Civil Code Section 3345, Plaintiff asks for treble damages because Defendants knew or should have known that their conduct was directed to Plaintiff who is a senior citizen, and that Defendants' conduct would most likely cause this senior Plaintiff to suffer loss or encumbrance of his primary residence and/or substantial loss of property set aside for retirement, and that Plaintiff was more vulnerable than other members of the public to the Defendants' conduct.

WHEREFORE, Plaintiff prays for relief as set forth below.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

**THIRD CAUSE OF ACTION**

**Violation of California Civil Code Sections 1920 and 1921;**

**(Against all Defendants except PRINCIPAL LIFE)**

69.    Plaintiff realleges and incorporates by this reference the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

70.    Based on information and belief, Plaintiff alleges that Defendants, and each of them, violated California Civil Code Section 1920 and 1921 in failing to meet the requirements of an adjustable rate mortgage instrument as set forth in California Civil Code Section 1920, and the requirements for disclosure of information in connections with an adjustable rate mortgage instrument as set forth in California Civil Code Section 1921.

71.    Under California Civil Code Section 3345, Plaintiff asks for treble damages because Defendants knew or should have known that their conduct was directed to Plaintiff who is a senior citizen, and that Defendants' conduct would most likely cause this senior Plaintiff to suffer loss or encumbrance of his primary residence and/or substantial loss of property set aside for retirement, and that Plaintiff was more vulnerable than other members of the public to the Defendants' conduct.

WHEREFORE, Plaintiff prays for relief as set forth below.

**FOURTH CAUSE OF ACTION**

**Violation of the Unfair Competition Act,**

**California Business and Processions Code § 17200 *et seq.*;**

**(Against all Defendants)**

72.  Plaintiff realleges and incorporates by this reference the allegations of all preceding paragraphs of this Complaint as though fully set forth herein.

73.  Defendants, and each of them, have committed acts of unfair business practices, as defined by California Business and Professions Code Section 17200, et. seq., by engaging in acts and practices which include, but are not limited to their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above, and including but not limited to making loans based on borrower

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

1  information which Defendants, and each of them, falsified; using bait and switch tactics with reverse

2  mortgages and with the initial loan application; making loans without confirming or verifying

3  borrower information; making loans without providing the borrower with sufficient, accurate and

4  understandable information regarding the terms and conditions of the loan; making loans without

5  providing the borrower with sufficient, accurate and understandable information regarding the nature

6  and extent of the financial risk being assumed by the borrower; and making loans without regard to the

7  financial ability of the borrower to pay.

8      74.  These acts all as alleged above violate California Business and Professions Code Section

9  17200, et. seq. in the manner alleged above, and, based on information and belief, in the following

10  further respects: Defendants' conduct threatens an incipient violation of various consumer protection

11  statutes, or which violate the policy or spirit of such laws, including, but not limited to, California

12  Business and Professions Code Section 17500; California Civil Code Section 1921; California Civil

13  Code Section 1920; California Civil Code Section 1770; California Civil Code Section 1709, 1710 and

14  1711; Section 1639 of Title 15 of the United States Codes, together with 12 CFR 226.1 (Regulation Z).

15      75.  All Defendants except PRINCIPAL LIFE engaged in the following unfair business

16  practices including, without limitation, the following:

17        (a)  Implementing Defendants' **"5 part Deceptive Acts and Practices**

18            **Predatory Loan Scheme"**

19        (b)  Engaging in predatory lending practices in dealings with Plaintiff including

20            but not limited to, the use of high pressure sales tactics and the falsification

21            of Plaintiff's loan application information;

22        (c)  Self-dealing at the expense of Plaintiff;

23        (d)  Failing to provide notices and disclosures required by TILA and RESPA;

24        (e)  Violating TILA; Violating RESPA; Violating the False Advertising Act,

25            California Business and Professions Code Section 17500 *et seq.*, or any

26            other applicable statute;

27

28

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

(f)  Engaging in Elder Abuse under California Welfare & Institutions Code Section 15600 *et seq*; Violating California Civil Codes Sections 1920 and 1921; Violating California Civil Code Sections 1709, 1710 and 1711;

(g)  Charging and collecting fees in excess than those permitted under statute;

(h)  Charging, collecting and distributing illegal kickbacks under the guise of fees and commission for services that had no reasonable value due to the Defendants "**5 part Deceptive Acts and Practices Predatory Loan Scheme**";

(i)  Using slight of hand paper shuffling tactics to get Plaintiff to sign an annuity application with Defendant PRINCIPAL LIFE;

(j)  Lying to Plaintiff that he needed to bring a check for $50,000 to Defendants, because escrow had failed to pay off the Wells Fargo Bank line of credit;

(k)  Writing the payee on Plaintiff's check as Defendant PRINCIPAL LIFE, and falsifying Plaintiff's initials on the check to lend authenticity to their fraud;

(l)  Other acts that Plaintiff is presently unaware of;

76.  Defendant PRINCIPAL LIFE has violated the UCL by:

(a) Issuing annuity contracts to seniors that violate the notice requirements of Insurance Code sections 10127.10 and 10127.13. These statutes are designed to provide specific notice to seniors of surrender penalties they may face in purchasing annuities. Based on information and belief, PRINCIPAL LIFE violated these statutes in various ways, including: failing to send policies to Plaintiff for the required 30 day free look period when Plaintiff was unknowingly tricked by the PRINCIPAL LIFE agents to sign the PRINCIPAL LIFE annuity application.

(b) Based on information and belief, PRINCIPAL LIFE allowed its agents to use trickery and deceit to have Plaintiff unknowingly sign the PRINCIPAL

LIFE annuity application, and then to pay these agents under the guise of
commissions and fees for services that had no reasonable value due to the
Defendants "**5 part Deceptive Acts and Practices Predatory Loan
Scheme**";

    (c) Undisclosed conflicts of interest and self dealing and failing to disclose
steering agreements.  It is alleged on information and belief that
PRINCIPAL LIFE had/has steering agreements with Defendants to sell the
PRINCIPAL LIFE annuities to individuals including senior citizens. These
steering agreements resulted in undisclosed conflicts of interest and self
dealing as to the existence of the steering agreements and the receipt of
undisclosed fee splitting and kickbacks;

    (d) Engaging in Elder Abuse under California Welfare & Institutions Code
Section 15600 *et seq.*;

    (e) Other acts which Plaintiff is currently unaware of.

77.    As a direct and proximate result of the aforementioned acts, Defendants, and each of them, obtained illegal kickbacks from Plaintiff's equity in his home.  Predictably, Plaintiff is now facing default on his loan and foreclosure on his home.  Plaintiff has suffered injury as alleged herein.

78.    Plaintiff individually and on behalf of the public, seeks an order of this Court enjoining Defendants and prohibiting each of the said Defendants from predatory loan practices of the nature and kind herein alleged, as the public and Plaintiff will be irreparably harmed if such an order is not granted.

79.    Defendants have been unjustly enriched at the expense of the Plaintiff, who therefore is entitled to equitable restitution and disgorgement of profits realized by Defendants as result of the unfair, unlawful, deceptive, untrue and/or misleading advertising practices.

80.    Moreover, because Plaintiff brings this action on behalf of himself and on behalf of the general public, he is entitled to reasonable attorneys' fees pursuant to California Code of Civil

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

1   Procedure section 1021.5.  Plaintiff has sustained damages, including attorney fees and legal costs,

2   and will sustain additional damages in prosecuting this action.

3       81.    Defendants knew their conduct was directed to one or more senior citizens, that those

4   senior citizens were more vulnerable to said conduct than other members of the general public, or that

5   their actions would cause harm and injury to the senior citizens and/or their heirs and beneficiaries,

6   thereby entitling Plaintiffs to trebling of any restitution awarded, under Civil Code section 3345.

7       WHEREFORE, Plaintiff prays for relief as set forth below.

8

9                          **FIFTH CAUSE OF ACTION**

10                    **Violation of the False Advertising Act,**

11          **California Business and Professions Code § 17500 *et seq*.;**

12       **(Against Defendants SAF/ FCF, CEI, WHITE, COPLEY, COLBERT)**

13      82.    Mr. Clark hereby repeats and realleges all preceding paragraphs and incorporates the

14   same as though fully set forth herein.

15      83.    Defendants implemented their **"5 part Deceptive Acts and Practices Predatory Loan**

16   **Scheme"** as alleged above.  The advertising, promotional materials and other written or oral promotion

17   efforts undertaken by Defendants to induce consumers to enter into loan transactions contained

18   statements that were deceptive, untrue and/or misleading, or omitted material information, and which

19   were known, or by the exercise of reasonable care should have been known by Defendant to be

20   deceptive, untrue and/or misleading, in violation of California Business and Professions Code section

21   17500 *et seq.*

22      84.    Defendants' use of various forms of advertising call attention to or give publicity to the

23   sale of their goods or services, and other practices, as set forth above, which were not as advertised or

24   as otherwise represented, constituted unfair competition, deceptive untrue and/or misleading

25   advertising and unlawful business practice within the meaning of California Business and Professions

26   Code sections 17200 *et seq.*, and 17500 *et seq.*

27

28

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

85.    These advertisements and practices have deceived and injured Plaintiff and are likely to deceive and injure the consuming public in violation of those sections.

86.    Pursuant to California Business and Professions Code sections 17203 and 17535, Plaintiff individually and on behalf of the public, seeks an order of this Court enjoining Defendants form continuing to engage in their false advertising practices.  The public and Plaintiff will be irreparably harmed if such an order is not granted.

87.    Defendants have been unjustly enriched at the expense of the Plaintiff, who therefore is entitled to equitable restitution and disgorgement of profits realized by Defendants as result of the unfair, unlawful, deceptive, untrue and/or misleading advertising practices.

88.    Moreover, because Plaintiff brings this action on behalf of himself and on behalf of the general public, he is entitled to reasonable attorneys' fees pursuant to California Code of Civil Procedure section 1021.5.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Constructive Fraud, California Civil Code, § 1573;

### (Against Defendants SAF/FCF, CEI, WHITE, COPLEY, COLBERT)

89.    Mr. Clark hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

90.    Defendants owed a fiduciary duty to Plaintiff because they were acting in their capacities as DRE licensees and/or mortgage brokers and/or insurance agents.

91.    Defendants breached that duty by, *inter alia*, implementing their **"5 part Deceptive Acts and Practices Predatory Loan Scheme"** as alleged above, and misrepresenting or failing to disclose material facts about the transaction.

92.    Specifically, SAF/FCF, through WHITE, COLBERT and others, falsely represented that Plaintiff's Homeowner's Association had refused to approve Plaintiff's reverse mortgage; that Plaintiff's true interest rate on his loan would be 1%; that the monthly payment would be for 480

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

months with Proposed payments of $328.91; what the true approximate monthly mortgage obligations would be on his loan; that Plaintiff could not back out of the QHL loan transaction; that Plaintiff was signing loan applications documents when Defendants had him sign an annuity application.

93.    Defendant COPLEY, falsely represented to Defendant PRINCIPAL LIFE, that Plaintiff had knowingly signed an annuity application.   Defendant COLBERT, falsely represented to Plaintiff that escrow was short $50,000 because the Wells Fargo liability had not been paid.  Defendants falsely filled in the payee on Plaintiff's check, and falsely put Plaintiff's initials on the check to lend authenticity to their scheme.

94.    Defendants also concealed, certain material facts from Plaintiff who was not aware of them including, but not limited to the following:

 a)  On information and belief, that Plaintiff's Homeowner's Association had not disapproved of Plaintiff's reverse mortgage;

 b)  The true interest rate on his loan application;

 c)  The true terms of his loan;

 d)  That Defendants' had falsified his income on the loan;

 e)  That the loan presented at closing was not the loan presented to Plaintiff and the one which he had applied for;

 f)  That using his true monthly income and assets, Plaintiff did not qualify for the loan;

 g)  That Plaintiff was not obligated to proceed with the loan;

 h)  That Plaintiff would be divested of all of his interest in his home;

 i)  That Plaintiff had unknowingly signed an annuity application based on the scheme of the Defendants;

 j)  That the $50,000 check was the premium for Defendant PRINCIPAL LIFE on the annuity;

 k)  Other Acts of which Plaintiff is presently unaware;

95.    Defendants intended to deceive Plaintiff by the misrepresentations and nondisclosures.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

96.    Plaintiff reasonably relied on the misrepresentations or nondisclosures because he is a financially unsophisticated individual, a 72 year old senior who thought that Defendants were acting as his agent and in his best interests.

97.    Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

98.    As a proximate result of his reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained.  Plaintiff reasonably relied on Defendants' misrepresentations which were a substantial factor in causing Plaintiff's damages.

99.    Defendants are guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and where appropriate Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants. Also, under California Civil Code Section 3345, Plaintiff also asks for treble damages because Defendants knew or should have known that their conduct was directed to Plaintiff who is a senior citizen, and that Defendants' conduct would most likely cause this senior Plaintiff to suffer loss or encumbrance of his primary residence and/or substantial loss of property set aside for retirement, and that Plaintiff was more vulnerable than other members of the public to the Defendants' conduct.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SEVENTH CAUSE OF ACTION

### Intentional Misrepresentation, California Civil Code §§ 1709-1710;

### (Against Defendants QHL, SAF/FCF, WHITE, COLBERT, COPLEY)

100.    Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

101.    Defendants, and each of them, implement their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

102.    Defendants knowingly and willfully induced Plaintiff to enter into the loan agreement by making false oral statements and omitting material information regarding the terms of the loan and Plaintiff's application.

103.    Specifically, SAF/FCF, through WHITE, COPLEY and others, falsely represented that Plaintiff's Homeowner's Association had refused to approve Plaintiff's reverse mortgage; that Plaintiff's true interest rate on his loan would be 1%; the true approximate monthly mortgage obligation on his loan; the term of Plaintiff's loan being 480 months with Proposed payments of $328.71; that Plaintiff could not back out of the QHL loan transaction; that Plaintiff was signing loan applications documents when Defendants had him sign an annuity application. Defendants SAF/FCF and/or QHL falsified Plaintiff's loan application as to Plaintiff's income in order to qualify the loan.

104.    Defendant COPLEY, falsely represented to Defendant PRINCIPAL LIFE, that Plaintiff had knowingly signed an annuity application. Defendant COLBERT, falsely represented to Plaintiff that escrow was short $50,000 because the Wells Fargo liability had not been paid. Defendants falsely filled in the payee on Plaintiff's check, and falsely put Plaintiff's initials on the check to lend authenticity to their scheme.

105.    Defendants knew that these representations were false at the time they were made or made the false representations in reckless disregard of the truth.

106.    Defendants intended that Plaintiff rely on the misrepresentations.

107.    Plaintiff reasonably relied on Defendants' misrepresentations. Plaintiff relied upon Defendants' misrepresentations because he is a financially unsophisticated individual, a 72 year old senior who thought that Defendants were acting as his agent and in his best interests.

108.    Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

109.    As a proximate result of his reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiff reasonably relied on Defendants' misrepresentations which were a substantial factor in causing Plaintiff's damages.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

110.   Defendant are guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants. Also, under California Civil Code Section 3345, Plaintiff also asks for treble damages because Defendants knew or should have known that their conduct was directed to Plaintiff who is a senior citizen, and that Defendants' conduct would most likely cause this senior Plaintiff to suffer loss or encumbrance of his primary residence and/or substantial loss of property set aside for retirement, and that Plaintiff was more vulnerable than other members of the public to the Defendants' conduct.

WHEREFORE, Plaintiff prays for relief as set forth below.


## EIGHTH CAUSE OF ACTION

### Concealment, California Civil Code §§ 1709-1710;

### (Against Defendants QHL, SAF/FCF, WHITE, COLBERT, COPLEY)

111.   Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

112.   Defendants, and each of them, implement their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above.

113.   Defendants knowingly and willfully induced Plaintiff to enter into the loan agreement by making false oral statements and omitting material information regarding the terms of the loan and Plaintiff's application.

114.   Defendants concealed, certain material facts from Plaintiff who were not aware of them including, but not limited to the following:

   a)   On information and belief, that Plaintiff's Homeowner's Association had not disapproved of Plaintiff's reverse mortgage;

   b)   The true interest rate on his loan application;

   c)   The true terms of his loan;

   d)   That Defendants' had falsified his income on the loan;

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

e) That the loan presented at closing was not the loan presented to Plaintiff and the one which he applied for;

f) That using his true monthly income and assets, Plaintiff did not qualify to for the loan;

g) That Plaintiff were not obligated to proceed with the loan;

h) That Plaintiff would be divested of all of his interest in his home;

i) That Plaintiff had unknowingly signed an annuity application based on the scheme of the Defendants;

j) That the $50,000 check was the premium for Defendant PRINCIPAL LIFE on the annuity;

115. Defendants were under a duty to disclose these facts to Plaintiff because of Defendants' fiduciary relation with Plaintiff, yet Defendants chose to conceal or suppress these facts with an intent to defraud.

116. Plaintiff was unaware of the facts and reasonably relied on Defendants' deception in proceeding with the loan transaction because Plaintiff is a financially unsophisticated individual, a 74 year old senior who thought that Defendants were acting as his agent and in his best interests.

117. Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

118. As a proximate result of his reasonable reliance on Defendants' deception(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained. Plaintiff reasonably relied on Defendant's misrepresentations which were a substantial factor in causing Plaintiff's damages.

119. Defendant were guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants. Also, under California Civil Code Section 3345, Plaintiff also asks for treble damages because Defendants knew or should have known that their conduct was directed to Plaintiff who is a senior citizen, and that Defendants' conduct would most likely cause this senior Plaintiff to suffer loss or encumbrance of his primary residence and/or substantial loss of

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

1 property set aside for retirement, and that Plaintiff was more vulnerable than other members of the

2 public to the Defendants' conduct.

3       WHEREFORE, Plaintiff prays for relief as set forth below.

4

5 **NINTH CAUSE OF ACTION**

6 **Negligent Misrepresentation, California Civil Code §§ 1709-1710;**

7 **(Against Defendants QHL, SAF/FCF, WHITE, COLBERT, COPLEY)**

8       120.    Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the

9 same as though fully set forth herein.

10       121.    Defendants, and each of them, implement their "**5 part Deceptive Acts and Practices**

11 **Predatory Loan Scheme**" as alleged above.

12       122.    Defendants falsely represented to Plaintiff, *inter alia*, that the following important facts

13 were true: a) Specifically, SAF/FCF, through WHITE, COPLEY and others, falsely represented that

14 Plaintiff's Homeowner's Association had refused to approve Plaintiff's reverse mortgage, b) that

15 Plaintiff's true interest rate on his loan would be 1%, c) that Plaintiff could not back out of the QHL

16 loan transaction; d) that the loan would be for 480 months with Proposed payments of $328.91; e) that

17 Plaintiff was signing loan applications documents when Defendants had him sign an annuity

18 application.

19       123.    Defendant COPLEY, falsely represented to Defendant PRINCIPAL LIFE, that Plaintiff

20 had knowingly signed an annuity application.  Defendant COLBERT, falsely represented to Plaintiff

21 that escrow was short $50,000 because the Wells Fargo liability had not been paid.  Defendants falsely

22 filled in the payee on Plaintiff's check, and falsely put Plaintiff's initials on the check to lend

23 authenticity to their scheme.

24       124.    Defendants had no reasonable basis for believing that the representations were true

25 when the representations were made.

26       125.    Defendants intended that Plaintiff rely on the misrepresentations.

27

28

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

126.    Plaintiff reasonably relied on Defendants' misrepresentations.  Plaintiff relied upon Defendants misrepresentations because he is a financially unsophisticated individual, a 74 year old senior who thought that Defendants were acting as his agent and in his best interests.

127.    Had Plaintiff known the truth, Plaintiff would not have agreed to Defendants' wishes or followed their instructions or signed their documents under their Scheme.

128.    As a proximate result of his reasonable reliance on Defendants' misrepresentation(s), Plaintiff sustained damages in an amount to be proven at trial but not yet ascertained.  Plaintiff reasonably relied on Defendant's misrepresentations which were a substantial factor in causing Plaintiff's damages.

129.    Defendant were guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants. Also, under California Civil Code Section 3345, Plaintiff also asks for treble damages because Defendants knew or should have known that their conduct was directed to Plaintiff who is a senior citizen, and that Defendants' conduct would most likely cause this senior Plaintiff to suffer loss or encumbrance of his primary residence and/or substantial loss of property set aside for retirement, and that Plaintiff was more vulnerable than other members of the public to the Defendants' conduct.

WHEREFORE, Plaintiff prays for relief as set forth below.


## TENTH CAUSE OF ACTION

### Violation of Cal. Civil Code § 1711 – Fraud on the Public;

### (Against Defendants SAF/FCF, WHITE, COLBERT, COPLEY)

130.    Plaintiffs refer to each and every preceding paragraph and incorporate those paragraphs as though set forth in full in this cause of action.

131.    Defendants, and each of them, practiced a deceit with intent to defraud Plaintiff and the Public through their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

132.  Defendants' fraud was the proximate cause of Plaintiff's damages as allged herein.

133.  Defendant were guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants. Also, under California Civil Code Section 3345, Plaintiff also asks for treble damages because Defendants knew or should have known that their conduct was directed to Plaintiff who is a senior citizen, and that Defendants' conduct would most likely cause this senior Plaintiff to suffer loss or encumbrance of his primary residence and/or substantial loss of property set aside for retirement, and that Plaintiff was more vulnerable than other members of the public to the Defendants' conduct.

WHEREFORE, Plaintiff prays for relief as set forth below.


## ELEVENTH CAUSE OF ACTION

### Rescission/Cancellation, California Civil Code § 1689,

### and Court's Inherent Equitable Authority;

### (Against all Defendants)

134.  Mr. Clark hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

135.  Plaintiff's consent to the QHL Mortgage Loan and the Principal Life annuity was obtained by Defendants, and each of them, through mistake, fraud, and undue influence by the implementation of their **"5 part Deceptive Acts and Practices Predatory Loan Scheme"** as alleged above.

136.  Defendants with intent to deceive Plaintiff and to unduly influence him to consent to the QHL loan which Defendants knew or should have known Plaintiff did not understand or comprehend, and which Defendants knew or should have known Plaintiff did not have sufficient income to afford or pay, did fraudulently conceal from Plaintiff that Plaintiff was thereby placing his sole material possession, his home, at severe risk of loss.  Defendants further bluffed Plaintiff into signed and then

1 funding a Principal Life annuity in order to reap further fees, commission and costs from the equity in

2 Plaintiff's home.

3    137.   The active misrepresentations of Defendants, and each of them, and their silence and

4 deceit, were false and fraudulent.

5    138.   At the time Defendants, and each of them, made the misrepresentations and engaged in

6 the concealment and deceit as alleged herein, and at the time Plaintiff signed any of the Loan

7 Application and/or the Loan Documents, Plaintiff did not know that the misrepresentations, deceit and

8 inducements by Defendants were false and fraudulent, but instead believed them to be truthful and

9 reasonably relied on them, thereby entering into the QHL loan without the benefit of the true facts, and

10 by duress, undue influence and coercion and mistake.

11    139.   At the time Defendants, and each of them, bluffed Plaintiff into signing and funding the

12 Principal Life annuity, Plaintiff did not know what the Defendants were doing, and was deceived by

13 Defendants false and fraudulent statements that escrow was short $50,000 to cover the Wells Fargo line

14 of credit.  Plaintiff believed Defendants' statements to be truthful and reasonably relied on them.

15    140.   As a result of the fraudulent misrepresentations, deceit and inducements by Defendants,

16 and each of them, Plaintiff has incurred substantial financial damages as herein alleged.  Plaintiff

17 hereupon serves notice of his demand for rescissionary damages on the grounds of fraudulent

18 misrepresentations and inducement, duress, undue influence, coercion and mistake by Defendants, an

19 each of them, as alleged herein.  To the extent Plaintiff's loan/annuity transactions documents contain

20 an exculpatory clause in favor of Defendants purporting to release Defendants from their own fraud,

21 Plaintiff alleges that such a clause is unenforceable pursuant to Civil Code section 1668 and other

22 applicable law.

23    141.   Plaintiff hereby demands restitution from Defendants, and each of them, in an amount

24 that will restore to Plaintiff the amount of home equity he previously held prior to the QHL Loan.

25 Plaintiff hereby demands restitution from Defendant Principal Life on the annuity that Defendants

26 purchased for him.  Plaintiff further alleges that Defendants, and each of them, have been unjustly

27 enriched by their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above,

28

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

1   and that the amount of all commissions earned by Defendants on both the QHL Loan/Principal Life

2   Annuity and all profits earned by Defendants as a result of any foreclosure of the QHL Loan must be

3   disgorged by Defendants to Plaintiff.

4       142.   Under California Civil Code Section 3345, Plaintiff also asks for treble damages because

5   Defendants knew or should have known that their conduct was directed to Plaintiff who is a senior

6   citizen, and that Defendants' conduct would most likely cause this senior Plaintiff to suffer loss or

7   encumbrance of his primary residence and/or substantial loss of property set aside for retirement, and

8   that Plaintiff was more vulnerable than other members of the public to the Defendants' conduct.

9       WHEREFORE, Plaintiff prays for relief as set forth below.

10

11                      **TWELFTH CAUSE OF ACTION**

12                        **Breach of Fiduciary Duty;**

13      **(Against Defendants SAF/FCF, CEI, WHITE, COPLEY, COLBERT)**

14      143.   Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same

15   as though fully set forth herein.

16      144.   California law imposes on the insurance agents/ real estate agents/and mortgage brokers,

17   as fiduciaries, the same obligation of undivided service and loyalty that it imposes on a trustee in favor

18   of a beneficiary.

19      145.   Defendants SAF/FCF, CEI, WHITE, COPLEY, COLBERT, owed Plaintiff fiduciary

20   duties of utmost loyalty, good faith and diligence and breached those duties by, *inter alia:*

21          a)   Implementing their "5 part Deceptive Acts and Practices Predatory Loan

22               Scheme" as alleged above;

23          b)   Baiting Plaintiff with a reverse mortgage that Defendants had no intention of

24               consummating for Plaintiff;

25          c)   Lying to Plaintiff that his Homeowner's Association had refused to approve the

26               reverse mortgage;

27

28

d)    Misleading Plaintiff to believe that his monthly mortgage payments and interest rate on the loan that he was applying for would be lower than they ultimately were;

e)    Failing to explain the terms of the loan transactions to Plaintiff;

f)    Inducing Plaintiff to sign loan documents by either misrepresenting the terms or failing to disclose the terms;

g)    Failing to disclose all charges incurred in connection with the refinance;

h)    Inducing Plaintiff to sign a loan that is more financially burdensome than the original loan presented to Plaintiff on his original application;

i)    Falsifying Plaintiff's income and assets on his loan application;

j)    Using slight of hand paper shuffling tactics to get Plaintiff to sign an annuity application with Defendant PRINCIPAL LIFE;

k)    Lying to Plaintiff that he needed to bring a check for $50,000 to Defendants, because escrow had failed to pay off the Wells Fargo Bank line of credit;

l)    Falsifying the payee on Plaintiff's check to Defendant PRINCIPAL LIFE, and falsifying Plaintiff's initials on the payee in an attempt to create authenticity to the fraud.

146.    Defendants engaged in their conduct alleged herein for the purpose of advancing their own financial interest and in callous disregard of the foreseeable financial consequences to Plaintiff.

147.    Defendants, and each of them, operated as agents of Defendant QHL and Defendant PRINCIPAL LIFE, and abandoned their fiduciary duty to Plaintiff.

148.    Defendants failed to act diligently by failing to evaluate Plaintiff's ability to repay the loans, failing to disclose all material terms of the transaction, and failing to comply with applicable consumer protections intended to benefit Plaintiff.

149.    As a result of Defendants' breach of their fiduciary duties to Plaintiff, Plaintiff has sustained damages to be proved at trial but not yet ascertained.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

150.   Defendant's conduct as alleged herein was a substantial factor in causing the damages sustained by Plaintiff, and as a direct, proximate and legal result of the above alleged breach of fiduciary duty, Plaintiff has suffered and will continue to suffer damages in an amount to be proven at trial, including, but not limited to, damages for loss of property and money, and damages for emotional distress.

151.   Defendant were guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and where appropriate Plaintiff should therefore recover, in addition to actual damages, damages to make an example of and to punish Defendants.

WHEREFORE, Plaintiff prays for relief as set forth below.

## THIRTEENTH CAUSE OF ACTION

### Negligence;

### (Against all Defendants including Defendant QHL)

152.   Plaintiff hereby repeats and realleges all preceding paragraphs and incorporates the same as though fully set forth herein.

153.   Because a mortgage loan broker is required to exercise reasonable care and diligence in any transaction and is bound to exercise his or her skill for the benefit of the principal, the agent is liable for any damages suffered by the principal as a result of any negligence in the performance of his or her agency duties.

154.   Defendants, and each of them, owed Plaintiff a duty to act with that degree of skill, prudence and diligence as other mortgage brokers and lenders of ordinary skill and capacity in the performance of the services that they undertake.

155.   A reasonably prudent mortgage loan broker would not have implemented their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above nor would they have directed Plaintiff to the QHL loan products nor originated such loans.

156.   Defendant QHL is secondarily liable for the actions of these Defendants, and each of them, who functioned as the agents for Defendant QHL.

157.   Plaintiff is informed and believes that Defendants also failed to consider the usual underwriting factors for assessing creditworthiness when they loaned to Plaintiff, and in fact that Defendants SAF/FCF, acting through WHITE, COLBERT, and/or others, and/or Defendant QHL, all falsified Plaintiff's loan application and deceived Plaintiff as to the true terms of the loan.

158.   Defendants, and each of them, knew or should have known to utilize the best practices for underwriting, originating and issuing loans when considering the QHL loan to Plaintiff but negligently failed to do so.

159.   Defendant SAF/FCF, acting through WHITE, COLBERT and/or others, breached its duty by encouraging Plaintiff to sign a loan with different terms than those they had represented to Plaintiff on his original loan application.

160.   Defendant SAF/FCF, acting through WHITE, COPLEY and/or others, breached its duty by secretly having Plaintiff unknowingly sign an annuity application with Defendant PRINCIPAL LIFE, without telling Plaintiff that he was signing such an application and without discussing with Plaintiff the purpose for such an application.

161.   By their conduct as alleged herein, Defendants were the proximate cause of damages sustained by Plaintiffs in an amount to be proven at trial but not yet ascertained.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTEENTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing;

### (Against all Defendants QHL and PRINCIPAL LIFE)

162.   Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

163.   The QHL Loan, including the promissory note and deed of trust, imposed upon Defendant QHL a covenant of good faith and fair dealing in performing the terms and conditions of the QHL Loan agreement and carrying out its purpose and intent.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

164.    Defendant QHL breached the implied covenant of good faith and fair dealing when Defendant QHL:

    (a) prepared and directed Plaintiff to sign the Loan Application;

    (b) secretly and fraudulently failed to take any steps to verify any of the information contain in the Loan Application;

    (c) changed the stated income on the loan application in order to qualify the loan, and kept this fact hidden from Plaintiff;

    (d) changed the interest rate on the loan application and kept this fact hidden from Plaintiff;

    (e) approved the QHL Loan based on information they knew or should have known to be false and inaccurate;

    (f) fraudulently induced Plaintiff to accept the QHL Loan;

    (g) failed to disclose to Plaintiff that should he fail to pay the $1164.58 monthly loan payments, he would lose his home and all equity in his home as well;

    (h) inserted a pre-payment penalty rider to the QHL loan; and

    (i) engaging in Elder Abuse under California Welfare & Institutions Code Section 15600 *et seq.*,

    (j) Other acts of which Plaintiff is presently unaware.

165.    Defendant PRINCIPAL LIFE breached the implied covenant of good faith and fair dealing regarding its annuity contract with Plaintiff as follows:

    (a) Issuing annuity contracts to seniors that violate the notice requirements of Insurance Code sections 10127.10 and 10127.13. These statutes are designed to provide specific notice to seniors of surrender penalties they may face in purchasing annuities. Based on information and belief, PRINCIPAL LIFE violated these statutes in various ways, including: failing to send policies to Plaintiff for the required 30 day free look period when Plaintiff was unknowingly tricked by the PRINCIPAL LIFE agents to sign the PRINCIPAL LIFE annuity application.

(b)  Based on information and belief, PRINCIPAL LIFE allowed its agents to use trickery and deceit to have Plaintiff unknowingly sign the PRINCIPAL LIFE annuity application, and then to pay these agents under the guise of commissions and fees for services that had no reasonable value due to the Defendants "**5 part Deceptive Acts and Practices Predatory Loan Scheme".**

(c)  Undisclosed conflicts of interest and self dealing and failing to disclose steering agreements.  It is alleged on information and belief that PRINCIPAL LIFE had/has steering agreements with Defendants to sell the PRINCIPAL LIFE annuities to individuals including senior citizens. These steering agreements resulted in undisclosed conflicts of interest and self dealing as to the existence of the steering agreements and the receipt of undisclosed fee splitting and kickbacks.

(d)  Engaging in Elder Abuse under California Welfare & Institutions Code Section 15600 *et seq.,*

(e)  Other acts which Plaintiff is currently unaware of.

166.    As a proximate result of the aforementioned acts and omissions by Defendant QHL and PRINCIPAL LIFE, Plaintiff has suffered loss of monies in a sum to be proven at the time of trial.  It has also become reasonably necessary for Plaintiff to retain counsel to recover amounts due under the contract.

167.    The aforementioned acts were performed by Defendant QHL and PRINCIPAL LIFE maliciously, fraudulently and oppressively entitling Plaintiff to punitive damages in an amount appropriate to punish these Defendants.

168.    These Defendants knew their conduct was directed to one or more senior citizens, that those senior citizens were more vulnerable to said conduct than other members of the general public, or that its actions would cause harm and injury to the senior citizens and/or their heirs and beneficiaries, thereby entitling Plaintiff to trebling of any punitive damages award, under Civil Code section 3345.

WHEREFORE, Plaintiff prays for relief as set forth below.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

## FIFTEENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (Against all Defendants)

169. Plaintiff realleges and incorporates by this reference all the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

170. Defendants, and each of them, acted with conscious and outrageous disregard towards Plaintiff by implementing their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above, so as to foreseeably cause Plaintiff severe and enduring emotional distress including persistent and strong feelings of fear, shock, worry, anxiety, anger, depression, sadness, embarrassment, humiliation, shame and disappointment, constituting an extreme and outrageous invasion of Plaintiff's mental and emotional tranquility.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTEENTH CAUSE OF ACTION

### Elder Abuse: California Welfare & Institutions Code Section 15600 *et seq*;

### (Against all Defendants)

171. Plaintiff refers to and incorporates all preceding allegations as if set forth here in full.

172. Defendants, and each of them, financially abused Plaintiffs by implementing their "**5 part Deceptive Acts and Practices Predatory Loan Scheme**" as alleged above. Section 15610.07(a) of the Welfare and Institutions Code defines "Abuse of an Elder" in general as "Physical abuse, neglect, **financial abuse**, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering" (emphasis added). Further, section 15600 *et seq*. of the Welfare and Institutions Code defines Financial Abuse as a situation where any person or entity does or assists in, "taking, secreting appropriating, or retaining real or personal property of an elder or dependant adult to a wrongful use or with intent to defraud, or both." *Cal. Welf. & Inst. Code* § 15610.30(a)(2) (2005).

173. Defendants, and each of them, are guilty of malice, fraud or oppression, as defined in Civil Code section 3294, and Plaintiff should therefore recover, in addition to actual damages, damages

to make an example of and to punish Defendants. Also, under California Civil Code Section 3345,

Plaintiff asks for treble damages because Defendants knew or should have known that their conduct

was directed to Plaintiff who is a senior citizen, and that Defendants' conduct would most likely cause

this senior Plaintiff to suffer loss or encumbrance of his primary residence and/or substantial loss of

property set aside for retirement, and that Plaintiff was more vulnerable than other members of the

public to the Defendants' conduct.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SEVENTEENTH CAUSE OF ACTION

### Predatory Lending,

### Violation of California Financial Code § 4970 et seq.

### (Against all Defendants)

174.  Plaintiff realleges and incorporates by this reference the allegations of all preceding
paragraphs of this Complaint as though fully set forth herein.

175.  Plaintiff's loan was and is a covered loan as defined in California Financial Code section
4970.

176.  Plaintiff's loan was and is a consumer loan as defined in California Financial Code
section 4970.

177.  Defendants SAF/FCF, acting through WHITE and COLBERT owed Plaintiff fiduciary
duties, *inter alia*, pursuant to California Financial Code section 4979.5.

178.  On information and belief, Defendants originated the QHL loan in violation of and
noncompliance with, *inter alia*, California Financial Code section 4973 and 4979.6.

179.  On information and belief, Defendants did not provide the disclosures mandated by
California Financial Code section 4970, et seq.

180.  On information and belief, Defendant QHL originated the loan knowingly and recklessly
disregarding SAF/FCF, WHITE, and COLBERT's violation(s) of California Financial Code section
4970 et seq. or other unlawful conduct.

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

181.   By the actions and other conduct described herein, Defendants proximately caused damage to Plaintiff in an amount to be proven at trial but not yet ascertained.

WHEREFORE, Plaintiff pays for damages as set forth below.

## **PRAYER FOR RELIEF**

**WHEREFORE, Mr. Clark prays for judgment on the above causes of action against Defendants as follows:**

1.  That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. section 1367;

2.  That the Court declare that defendants violated applicable provisions of federal and state law;

3.  That the Court enjoin all unlawful practices complained of in this action and impose affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all person acting in concert or participating with them, to take affirmative action to immediately implement policies designed to ensure: (1) that all prospective borrowers' loan applications do not contain false information, (2) a thorough evaluation of all prospective borrowers' ability to repay any loans made available to them, (3) training regarding applicable lending laws for all of defendants' employees and agents;

4.  That the Court order defendants to immediately rescind the loans and return all cost to Plaintiff associated with the loans;

5.  That the Court award monetary, statutory, compensatory and punitive damages, where appropriate, to plaintiff according to proof;

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

6.  That the Court award plaintiffs costs of suit, including reasonable attorney's fees; and

7.  That the Court award plaintiffs all other relief as the Court deems just.

DATED:  February 27, 2007                    LAW OFFICES OF RONALD A. MARRON, APLC

By: *Ronald Marron*

Ronald A. Marron, Esq.
*Attorneys for Plaintiff Robert Clark*

**JURY TRIAL DEMANDED**

Plaintiff hereby demands an expedited trial by jury due to his age.

Dated:  February 27, 2007

By: *Ronald Marron*

Ronald A. Marron, Esq.
*Attorneys for Plaintiff Robert Clark*

PREDATORY LENDING COMPLAINT AND ILLEGAL KICKBACKS

# ATTACHMENT 1

# Direct Endorsement Approval for a HUD/FHA-Insured Mortgage

U.S. Department of Housing And Urban Development

| Part I – Identifying Information (mark the type of application | 2. Agency Case No. (include any suffix) | 3. Lender's Case No | 4.Section of the Act (for HUD cases) |
|---|---|---|---|
| 1. ☑ HUD/FHA Application for Insurance (for HUD cases) under the National Housing Act | | | 255 |

| 5. Borrower's name & Present Address (include zip code) | 7. Loan Amount (include the UFMIP for HUD or Funding Fee if for VA | | 8. Interest Rate % | 9. Proposed Maturity |
|---|---|---|---|---|
| Robert J Clark 540 Oakland Lane #L El Cajon    CA    92021 | | | | |

| 10. Discount Amount (only if borrower is permitted to pay) N/A | 11.Amount of Up Front Premium | 12a. Amount of Monthly Premium /mo | 12b. Term of Monthly Premium months |
|---|---|---|---|

6. Property Address (incl. name of subdivision, lot & block no. & zip code)

540 Oakland Lane #L
El Cajon    CA    92021

| 13. Lender's I.D. Code MJ7738 | 14. Sponsor/Agent I.D. Code 1015500002 |
|---|---|

First California Funding Group, Inc.
2650 Camino del Rio North
Suite 350
San Diego, CA 92108

16. Name & Address of Sponsor / Agent

Financial Freedom Senior Funding Corp
500 Northridge Road
Suite 500
Atlanta    GA    30350

17. Lender's Telephone Number
(619)294-6000

☑ Approved:    Approved subject to the additional conditions stated below, if any.

Date Mortgage Approved                     Date Approval Expires:

| ☐ Modified & Approved as Follows: | Loan Amount (include UFMIP) | Interest Rate % | Proposed Maturity | Monthly Payment: | Amount of Upfront Premiums | Amount of Annual Premiums | Term of Annual Premiums |
|---|---|---|---|---|---|---|---|

**Additional Conditions:**

☐ Form HUD-92544, Builders Warranty is required.
☐ Owner-Occupancy Not required (delete item b of the borrower's Certification on the back of this sheet).
☐ The property is to be insured under Section 221(d)(2); a code compliance inspection is required.
☐ If this is proposed construction, the builder has certified compliance with HUD requirements on form HUD-92541.
☐ The property has a 10-year warranty.
☐ The mortgage is a high loan-to-value ratio for non-occupant mortgagor in military.
☐ Other: (specify)
☐ This mortgage was rated as an "accept" or "approve" by a FHA's Total Mortgage Scorecard. As such, the undersigned representative of the mortgagee certifies to the integrity of the data supplied by the lender used to determine the quality of the loan, that a Direct Endorsement Underwriter reviewed the appraisal (if applicable) and further certifies that this mortgage is eligible for HUD mortgage insurance under the Direct Endorsement program. I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4

Mortgagee Representative: _____

☑ This mortgage was rated as a "refer" by a FHA's Total Mortgage Scorecard, and/or was manually underwritten by a direct Endorsement underwriter. As such, the undersigned direct Endorsement underwriter certifies that I have personally reviewed the appraisal report (if applicable), credit application, and all associated documents and have used due diligence in underwriting this mortgage. I find that this mortgage is eligible for HUD mortgage insurance under the Direct Endorsement program and I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4

Direct Endorsement Underwriter: _____    DE's CHUMS ID Numbe _____

**The Mortgagee, its owners, officers, employees or directors ☐ do ☑ do not have a financial interest in or a relationship, by affiliation or ownership, with the builder or seller involved in this transaction.**

form HUD-92900-A (04/2004)

**Borrower's Certificate:**

, the undersigned certifies that:

(a) I will not have outstanding any other unpaid obligations contracted in connection with the mortgage transaction or the purchase of the said property except obligations which are secured by property or collateral owned by me independently of the said mortgaged property, or obligations approved by the Commissioner;

(b) One of the undersigned intends to occupy the subject property, (note: this item does not apply if owner-occupancy is not required by the commitment);

(c) All charge and fees collected from me as shown in the settlement statement have been have been paid by my own funds, and no other charges have been of will be paid by me in respect to this transaction;

(d) Neither I, nor anyone authorized to act for me, will refuse to sell or rent, after the making of a bona fide offer, or refuse to negotiate for the sale or rental of or otherwise make unavailable or deny the dwelling or property covered by this loan to any person because of race, color, religion, sex, handicap, familial status or national origin. I recognize that any restrictive covenant on this property relating to race, color, religion, sex, handicap, familial status or national origin is illegal and void and any such covenant is hereby specifically disclaimed. I understand that civil action for preventative relief may be brought by the Attorney General of the United States in any appropriate U.S. District Court against any person responsible for a violation of this certificate.

Borrower'(s) Signature(s) & Date

---

## Lender's Certificate:

The undersigned certifies that to the best of its knowledge:

(a) The statements made in its application for insurance and in this Certificate are true and correct;

(b) The conditions listed above or appearing in any outstanding commitment issued under the above case number have been fulfilled;

(c) Complete disbursement of the loan has been made to the borrower, or to his/her account and with his/her consent;

(d) The security instrument has been recorded and is a good and valid first lien on the property described;

(e) No charge has been made to or paid by the borrower except as permitted under HUD regulations;

(f) The copies of the credit and security instruments which are submitted herewith are true and exact copies as executed and filed for record;

(g) It has not paid any kickbacks, fee or consideration of any type, directly or indirectly, to any party in connection with this transaction except as permitted under HUD regulations and administrative instructions.

I, the undersigned, as authorized representative of Financial Freedom Senior Funding Corporation, mortgagee at this time of closing of this of this mortgage loan, certify that I have personally reviewed the mortgage loan documents, closing statements, application for insurance endorsement, and all accompanying documents. I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4.

| Lenders Name | NOTE: If the approval is executed by an agent in the name of Lender, the agent must enter the lender's code number and Type. | |
|---|---|---|
| **First California Funding Group, Inc.** | | |
| Title of Lender's Officer | | |
| | Code Number (5 digits) | Type |
| Signature of Lender's Officer          Date | | |

form HUD-92900-A (04/2004

# Residential Loan Application for Reverse Mortgages

This application is designed to be completed by the applicant(s) with the lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must be provided when a person other than the "Borrower" (including the Borrower's spouse) is a co-owner of the real property that will be used as a basis for loan qualification or the Borrower's spouse is not a co-owner of the real property that will be used as a basis for loan qualification, but the Borrower resides in a community property state or the security property is located in a community property state.

## I. Type of Mortgage and Terms of Loan

| Mortgage Applied for: | FHA Case No. (HECM) | Lender Case No. |
|---|---|---|
| _____ Home Keeper (Fannie Mae) | | |
| _____ HECM (FHA)* | **Loan Payment Plans:** | |
| _____ Other _____ | _____ Line of Credit (not available in Texas) | _____ Term (HECM only) |
| (specify) | _____ Modified Term (HECM Only) | _____ Modified Tenure |
| *Complete HUD/VA Addendum | _____ Tenure | _____ Undecided |

Special Loan Features:    _____ Equity Share    _____ Other(Specify) _____

Amortization Type:    _____ ARM (type): _____ (indicate monthly or annual)

_____ Fixed Rate    _____ Other (explain): _____

## II. Property Information

**Subject Property Address (street, city, state, county, and zip code)**
540 Oakland Lane #L
El Cajon, CA  92021
San Diego County

**Legal Description of Subject Property (attach description if necessary)**

**Property Title is Held in These Names:  (Please list all names on property title)**

| No. of Units | Year Built | Estimate of Appraised Value $250,000 |
|---|---|---|

Residence Type:    _____ Primary Residence    _____ Secondary Residence    _____ Investment Property

Property Title Held As:    _____ Fee Simple    _____ Life Estate    _____ Leasehold (Expiration Date: _____)

Check if title is also held as: _____ Inter Vivos (Living) Trust

## III. Borrower Information

| Borrower's Name (include Jr. or Sr., if applicable) | Co-Borrower's Name (include Jr. or Sr., if applicable) |
|---|---|
| Mr. Robert J Clark | |

| Social Security Number | DOB (MM/DD/YYYY) 01/19/1933 | Social Security Number | DOB (MM/DD/YYYY) |
|---|---|---|---|
| Monthly Income: | | Monthly Income: | |
| Real Estate Assets: | | Real Estate Assets: | |
| Available Assets: | | Available Assets: | |
| Home Phone (including area code): (619) 447-6413 | | Home Phone (including area code): | |
| Years of Residence at Present Address: | | Years of Residence at Present Address: | |
| Mailing Address, if different from Subject Property Address | | Mailing Address, if different from Subject Property Address | |

| Marital Status: | | Marital Status: | |
|---|---|---|---|
| _____ Married    _____ Unmarried (include Single, divorced, widowed) | | _____ Married    _____ Unmarried (include Single, divorced, widowed) | |
| Alternative Contact Person (name, address, phone): | | Alternative Contact Person (name, address, phone): | |

Fannie Mae Form 1009 03/2004

## IV. Liens Against The Property

List the creditor's name, address, and account number for all liens against the property.
NOTE:  This section should not be used to list all personal liabilities, only liens against the property

| Name of Creditor | Address of Creditor | Unpaid Balance |
|---|---|---|
| **Account Number** | | |
| Name of Creditor | Address of Creditor | Unpaid Balance |
| **Account Number** | | |
| Name of Creditor | Address of Creditor | Unpaid Balance |
| **Account Number** | | |
| | Total liens to be paid: | |

## V. Total Non-Real Estate Debts

Total Amount of Non-Real Estate Debts:

## VI. Declarations

*If you answer "Yes" to any questions a through h,*
*please use continuation sheet for explanation*

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a.  Are there any outstanding judgments against you? | ☐ | ☐ | ☐ | ☐ |
| b.  Have you filed for any bankruptcy that has not been resolved? | ☐ | ☐ | ☐ | ☐ |
| c.  Are you a party to a lawsuit? | ☐ | ☐ | ☐ | ☐ |
| d.  Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee?  [If "Yes," give details, including date, name and address of lender, FHA or VA Case number (if applicable), and reason for delinquency/default.] | ☐ | ☐ | ☐ | ☐ |
| e.  Do you intend to occupy the property as your primary residence? | ☐ | ☐ | ☐ | ☐ |
| f.  Are you a co-maker or endorser on a note?  (Optional for HUD) | ☐ | ☐ | ☐ | ☐ |
| g.  Are you a U.S. citizen?  (Optional for HUD) | ☐ | ☐ | ☐ | ☐ |
| h.  Are you a permanent resident alien?  (Optional for HUD) | ☐ | ☐ | ☐ | ☐ |

Fannie Mae Form 1009 03/2004

## VII. Acknowledgment and Agreement

Each of the undersigned specifically represents to Lender and Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust of the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and, Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; and (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property.

Certification: I/We certify that the information provided in this application is true and correct as of the date set forth opposite my/our signatures(s) on this application and acknowledge my/our understanding that any intentional or negligent misrepresentation(s) of the information contained in this application may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United State Code, Section 1001, et seq. and liability for monetary damages to the Lender, its agents, successors and assigns, insurers and any other person who may suffer any loss due to reliance upon any misrepresentation which I/we have made on this application.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

## VIII. Information for Government Monitoring Purposes

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to ensure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ____ I do not wish to furnish this information | | CO-BORROWER ____ I do not wish to furnish this information | |
|---|---|---|---|
| Ethnicity: | ____Hispanic or Latino  ____Not Hispanic or Latino | Ethnicity: | ____Hispanic or Latino  ____Not Hispanic or Latino |
| Race: | ____American Indian or  ____Asian<br>Alaska Native<br>____Native Hawaiian or  ____White  ____Black or<br>Other Pacific Islander  African American | Race: | ____American Indian or  ____Asian<br>Alaska Native<br>____Native Hawaiian or  ____White  ____Black or<br>Other Pacific Islander  African American |
| Sex: | ____Female  ____Male | Sex: | ____Female  ____Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by:<br><br>____Face-to-face interview<br><br>____Mail<br><br>____Telephone | | First California Funding Group, Inc.<br>2650 Camino del Rio North<br>Suite 350<br>San Diego, CA  92108 |
| | Interviewer's Signature<br><br>Date | |
| | Interviewer's Phone Number (incl. area code) | |

NOTE: FHA insures reverse mortgages for one to four family units under various provisions of the National Housing Act. The information contained on the loan application is collected to determine eligibility for the program as well as serve as verification of the applicant's statements. The performance function of the agency will be improved by collecting this data as determinations can be made regarding the characteristics of those borrowers obtaining HECM loans. The Public Reporting Burden for this collection is estimated to average one hour per response, including time for reviewing instructions, searching existing data sources, gathering and maintaining the data and completing and reviewing the collection of information. A response is required to obtain a HECM loan, but parties are not required to use this particular form. This information is covered by the Privacy Act.

Fannie Mae Form 1009 03/2004